UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/22/21
```

-------------------------------------------------------- X

UNITED STATES OF AMERICA        :
                                :          20-CR-295 (VEC)
        -against-               :
                                :          OPINION & ORDER
MICHAEL DEL VILLAR,             :
                                :
                    Defendant.  :
-------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Defendant Michael Del Villar has been charged in a four-count indictment with narcotics conspiracy and narcotics trafficking. *See* Superseding Indictment (S1), Dkt. 58. Defendant has moved to suppress evidence obtained: (1) incident to a cell-site location information ("CSLI") warrant; (2) pursuant to an allegedly unlawful, warrantless arrest; and (3) pursuant to a premises warrant obtained following Defendant's arrest.[1] *See* Notice of Mot., Dkt. 44. The Court held oral argument on April 29, 2021, and conducted an evidentiary hearing on May 12, 2021, at which the Court orally denied Defendant's motions and announced that a written opinion would follow. *See* Oral Arg. Tr., Dkt. 83; Suppression Hearing Tr., Dkt. 100. In addition to the reasons stated on the record at the May 12, 2021 hearing, for the reasons stated below, Defendant's motions to suppress are DENIED.

## BACKGROUND

### I.    The Warrants and Del Villar's Arrest

In February 2020, the Government sought a warrant for CSLI and an order authorizing use of a pen register for a cellphone registered to Michael Del Villar. *See* CLSI Application, Dkt. 46-1. In support of its application, the Government submitted an affidavit sworn to by Drug

---

[1] Del Villar's co-Defendant, Enrique Rosado, also filed a motion to suppress. *See* Notice of Mot., Dkt. 42. Rosado has now entered a guilty plea, rendering his motion moot.

Enforcement Administration ("DEA") Special Agent Sotirios Malamis ("Agent Malamis").  *See* CSLI Affidavit, Dkt. 46-1.  In his affidavit, Agent Malamis described his ten-year experience as a DEA agent.  *Id.* ¶ 1.  Agent Malamis attested that probable cause existed to believe that CSLI and pen register information from Del Villar's cellphone would lead to evidence of a narcotics conspiracy and money laundering, as well as to identification and locations of targets suspected of involvement in those crimes.  *Id.* ¶ 7.

In his affidavit in support of the warrant, Agent Malamis explained that he was aware of the DEA's ongoing investigation into narcotics trafficking involving Mexico-based cartels, in which narcotics frequently moved across the border from Mexico into California and Texas, eventually making its way to locations on the east coast, including New York City.  *Id.* ¶ 8. Based on his experience conducting telephone surveillance, Agent Malamis also stated that phones used in connection with narcotics trafficking often have certain call patterns, such as short-duration phone calls, multiple calls to the same numbers on the same day, and a complete cutoff of communication with other phones involved in the narcotics trafficking network after a brief flurry of activity.  *Id.* ¶ 9.

With respect to this specific investigation, Agent Malamis swore that the target cellphone, registered to Del Villar, had traveled back and forth from Los Angeles to New York City approximately five times between November 15, 2019, and February 11, 2020, with each trip lasting approximately two to five days.  *Id.* ¶ 10(a).  Agent Malamis also described a pattern of communications between Del Villar's cellphone and several other cellphones, some of which had been identified in other ongoing law enforcement investigations.  Specifically, Agent Malamis stated that Del Villar's cellphone had been in contact with a cellphone whose number

ended in 0965 (the "0965 Cellphone")[2] on two occasions on or around November 23, 2019.  *Id.* ¶ 10(e).  The 0965 Cellphone had itself been the subject of a CSLI warrant issued in this district in January 2020.  *Id.* ¶ 10(b).  Agent Malamis attested to several contacts between the 0965 Cellphone and others, including: that on or around December 10, 2019, the 0965 Cellphone had been in contact five times with a cellphone whose number ended in 4275 (the "4275 Cellphone"), the user of which had been arrested on January 9, 2020, in possession of approximately 36 kilograms of fentanyl and approximately 50 pounds of methamphetamine, *see id.* ¶ 10(c); and that between December 17, 2019, and December 19, 2019, the 0965 Cellphone was in communication approximately 13 times with a cellphone whose number ended in 2668 (the "2668 Cellphone").  *Id.* ¶ 10(d).  The 2668 Cellphone had been subject to interception pursuant to a wiretap order obtained as part of an investigation into a drug-trafficking organization, *see id.*  At least one conversation between a person using the 0965 Cellphone and a person using the 2668 Cellphone had been intercepted; in that call, the participants discussed a flight and reimbursement for expenses.  *Id.*

Agent Malamis also swore that: (1) a person using Del Villar's cellphone participated in one voice call with a cellphone whose number ended in 8759 (the "8759 Cellphone") on or around February 15, 2020, the interception of which revealed that the user of Del Villar's cellphone and the user of the 8759 Cellphone agreed to speak over the mobile application WhatsApp (WhatsApp offers the ability to converse via encrypted voice calls), *see id.* ¶ 10(f)– (i); (2) between November 15, 2019, and February 18, 2020, a person using Del Villar's cellphone was in communication with a Mexico-based phone number ending in 1102 (the "Mexico Phone") approximately 250 times, *see id.* ¶ 10(g); (3) a person using the Mexico Phone

---

[2]         The CSLI Affidavit often erroneously refers to the 0965 Cellphone as the "9065 Cellphone."

was in communication with the 0965 Cellphone approximately 12 times between December 10, 2019, and December 12, 2019, *id.*; (4) between November 22, 2019, and January 26, 2020, a person using Del Villar's cellphone was in communication with a person using a cellphone whose number ended in 8421 (the "8421 Cellphone") approximately 37 times, *see id.* ¶ 10(h); and (5) the person using the 8421 Cellphone had a significant number of contacts with several of the previously mentioned cellphones, including approximately 26 contacts with the 0965 Cellphone, six contacts with the Mexico Phone, and at least one contact with the 8759[3] Cellphone, *see id.* Based on this constellation of telephone communications and the pattern of Del Villar's travel, Agent Malamis stated that he believed Del Villar to be a "courier who transports and/or ships narcotics from California to New York, and distributes the narcotics while in the New York area." *Id.* ¶ 10(i).

On the basis of the Government's warrant application, on February 19, 2020, Magistrate Judge Moses issued a warrant to collect CSLI and pen register information from Del Villar's cellphone. *See* CSLI Warrant, Dkt. 46-1. Information obtained pursuant to the CSLI Warrant revealed that, in less than a month (from February 19, 2020, to March 9, 2020), Del Villar traveled from California to New York City approximately three times, including on March 9, 2020. *See* Strauss Affidavit ¶ 10(a), Dkt. 46-3.

Based on a cell site simulator warrant and order issued by Magistrate Judge Wang on March 9, 2020 ("CSS Warrant"), law enforcement determined that Del Villar's telephone was physically located at 37 West 126th Street in Manhattan. *Id.* ¶ 10(b); Premises Affidavit ¶ 10(f), Dkt. 46-5; *see also* CSS Warrant, Dkt. 46-3. At approximately 7:10 p.m. on March 9, surveillance agents observed Del Villar exit the building on West 126th Street carrying a heavily

---

[3]       The call between the 8759 Cellphone and the 8421 Cellphone was intercepted pursuant to a wiretap order. During the intercepted call the participants discussed two money order deposits to a Bank of America account and reimbursement for a plane ticket.  CSLI Affidavit ¶ 10(h).

weighted, squared-off backpack.  Premises Affidavit ¶ 11(a).  Agents observed Del Villar walk two blocks, enter a parked car, and, after a few minutes, exit the car and return to the building on West 126th Street, with the backpack appearing to weigh significantly less than when Del Villar got into the car; and the car drive away after Del Villar exited it.  *Id.* ¶¶ 11(a)–(b).  Ten minutes later, agents stopped the car into which Del Villar had entered and found six brick-shaped objects in a hidden compartment located underneath the backseat of the car; a field-test of the material was positive for heroin.  *Id.* ¶¶ 11(c)–(d).  Agents arrested the driver of the car, Del Villar's co-Defendant Rosado.  *Id.* ¶ 11(c).

Approximately one hour later, at 8:20 p.m., agents observed Del Villar again exit the building at West 126th Street; ten minutes later, at 8:30 p.m., agents arrested Del Villar as he was walking back toward that building.[4]  *Id.* ¶ 11(e).  Shortly after Del Villar's arrest, at approximately 8:45 p.m., Agent Malamis called the number associated with the target cellphone that was subject to the CSLI Warrant; one of Del Villar's two phones rang.  *Id.* ¶ 13(e).  Subsequent to Del Villar's arrest, and after agents had seized from him a key bearing the number "2" incident to his arrest, law enforcement sought and obtained a search warrant for the second-floor apartment in the building on West 126th Street and for two cellphones that were seized incident to his arrest.  *See* Premises Warrant, Dkt. 46-5.  Pursuant to the search warrant, law enforcement seized six brick-shaped packages of fentanyl from the second-floor apartment.  *See* Compl. ¶ 5.i, Dkt. 1.

## II.     Del Villar's Motion to Suppress

Del Villar seeks to suppress evidence obtained pursuant to the CSLI Warrant, claiming that the application for the warrant lacked probable cause.  Def. Mem. at 13–15, Dkt. 45.  In

---

[4]      As discussed below, Del Villar disputes the timing of his arrest based on a discrepancy in a DEA form that documented the arrest.  Because the Court credits the testimony of the DEA agents at the May 12, 2021 suppression hearing, the Court's account of the events of March 9, 2020, reflect an arrest time of 8:30 p.m.

support, Del Villar argued that the application was a quintessential example of "guilt by association," in which the Government sought to demonstrate probable cause to obtain Del Villar's CSLI by recounting a pattern of contacts among phone numbers associated with individuals other than Del Villar himself. *Id.* Because the warrant application was facially insufficient and because it was allegedly drafted in reliance on an outdated legal standard, Del Villar argued that the good-faith exception does not apply. *Id.* at 14–15.

Del Villar also contends that there was not probable cause for his arrest and that all evidence seized incident to the arrest and the fruits thereof must be suppressed. *Id.* at 7–13. Del Villar argues that the information the Government obtained in reliance on the CSLI warrant revealed nothing incriminating about Del Villar. *Id.* at 3–4, 8. Accordingly, at the time of the arrest, according to the Defendant, the DEA agents' entire basis for arresting Del Villar consisted of interrupted, incomplete surveillance of him exiting a building with a weighted, squared-off backpack, entering an unknown car and later returning to the building with what appeared to be a less-weighted backpack. *Id.* at 5, 8. Moreover, Del Villar argues that there is a question of fact whether the arresting agents were aware of the seizure of drugs from Rosado's car when they arrested Del Villar. *Id.* at 8–9. Finally, because the agents obtained the key to the apartment in which additional drugs were found incident to Del Villar's allegedly unlawful arrest, all evidence seized from the apartment must also be suppressed as fruit of the poisonous tree. *Id.* at 11–13.

Ordinarily this motion would have been quickly denied because the CSLI warrant application, as written, clearly established probable cause to believe the CSLI information would yield evidence of drug trafficking or money laundering. In the Government's opposition to the motion, however, it stated that the Government "does not rely on the contents of th[e] intercepted communications [documented in the CSLI Affidavit] for the purposes of the defendants' motions to suppress evidence, nor will the contents of those communications be used at trial." Gov't

Opp. at 9 n.14, Dkt. 50.  Beyond stating that position, the Government provided no explanation

for its tactical decision not to rely on probative material in the warrant application.  At oral

argument, the Government clarified that it was not "walking away from the fact that those

interceptions occurred"[5] and stated that the "decision not to rely on [the intercepts] doesn't have

anything to do with the government's position that [the information concerning the intercepts]

was truthful."  Oral Arg. Tr. at 10, 13–14.  While the Government conceded that the Court

would, therefore, need to evaluate the application for the CSLI Warrant *de novo* to ascertain

whether the Warrant was supported by probable cause absent the content of the intercepted

communications, it maintained that its decision not to rely on the content of the intercepts for

purposes of probable cause did not affect its argument that if the Court finds the warrant

application inadequate without those facts, the motion to suppress should nevertheless be denied

because of the good faith exception to the exclusionary rule.  *Id.* at 11, 13–14.  To the extent the

Court opted to reach the good faith issue, the Government requested that the Court hold an

evidentiary hearing to determine whether the agents reasonably relied in good faith on the CLSI

Warrant.  *Id.* at 33.

### III.    Suppression Hearing

On May 12, 2021, the Court held an evidentiary hearing on the motions to suppress.  *See*

Suppression Hearing Tr.  The Court informed the parties in advance that, with respect to Del

Villar, the hearing would be limited to: (1) whether the Government acted with an objectively

reasonable good faith belief that their conduct in executing the CSLI Warrant on Del Villar's

phone was lawful; and (2) whether the agents who arrested Del Villar did so only after suspected

narcotics were recovered from Rosado's car.  *See* Order, Dkt. 79.

---

[5]      The Government further clarified that it did want the Court to consider the fact that the 2668 Cellphone and the 8759 Cellphone were subject to wiretap orders; it disclaimed reliance only on the content of the intercepted calls discussed in the application for the CSLI warrant.  Oral Arg. Tr. at 12–13.

At the May 12 suppression hearing, Del Villar pursued a new line of attack on the CSLI Warrant that had not been raised previously.  Relying on the complete phone records for Del Villar's cellphone, Del Villar elicited testimony from Agent Malamis indicating that some of the entries documenting Del Villar's communications likely were duplicates or otherwise did not pertain to distinct phone calls.  *See, e.g.*, Suppression Hearing Tr. at 42–51.  Accordingly, Del Villar argued that the number of contacts between his cellphone and the other phones discussed in the CSLI Affidavit was vastly overstated in the warrant application, constituting a reckless disregard for the truth.  *Id.* at 108–10.

## IV.     The Motion to Suppress Evidence Obtained from the CSLI Warrant Is Denied

### A.  Legal Standard

Pursuant to *Carpenter v. United States*, "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [CSLI]"; accordingly, the Fourth Amendment requires the Government to obtain a warrant supported by probable cause before collecting CSLI.  138 S. Ct. 2206, 2217, 2221 (2018).  "[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules."  *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  Probable cause exists if the information in the warrant's supporting affidavit supplies "a fair probability that contraband or evidence of a crime will be found in a particular place" or in certain records to be searched.  *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (quoting *Gates*, 462 U.S. at 238).

A defendant may challenge a search warrant when the supporting affidavit contains deliberately or recklessly false or misleading information.  *Id.* at 717 (citing *Franks v. Delaware*, 438 U.S. 154, 164–72 (1978)).  But "[e]very statement in a warrant affidavit does not have to be

true." *United States v. Trzaska*, 111 F.3d 1019, 1027 (2d Cir. 1997) (citing *Franks*, 438 U.S. at 165).

> To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding."

*Canfield*, 212 F.3d at 717–18 (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998)).

Whether an affiant acted deliberately or recklessly is a question of fact. *See Trzaska*, 111 F.3d at 1028; *see also United States v. Rajaratnam*, 719 F.3d 139, 153 (2d Cir. 2013) ("Whether an individual had a particular mental state is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ." (cleaned up)).  Proof that the affiant was negligent or made an innocent mistake is insufficient to invalidate a warrant. *Franks*, 438 U.S. at 171.

To assess whether misstatements in an application for a warrant were material to the probable cause determination, a reviewing court sets aside the falsehoods in the supporting affidavit and examines whether the untainted remainder supports a finding of probable cause. *Rajaratnam*, 719 F.3d at 146 (citing *United States v. Coreas*, 419 F.3d 151, 155 (2d Cir. 2005); *United States v. Nanni*, 59 F.3d 1425, 1433 (2d Cir. 1995)).  The reviewing court should also supplement the affidavit with any facts that were not in the affidavit but that were proven at the suppression hearing. *Id.* (citing *United States v. Ippolito*, 774 F.2d 1482, 1487 n.1 (9th Cir. 1985)).

If the corrected warrant application supports a finding of probable cause, "then the misstatements are not 'material' and suppression is not required." *Rajaratnam*, 719 F.3d at 146; see also *Canfield*, 212 F.3d at 718 ("The ultimate inquiry is whether, after putting aside

erroneous information and material omissions, 'there remains a residue of independent and lawful information sufficient to support probable cause.'") (quoting *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir. 1985))).  A court reviews this "corrected" affidavit *de novo*. *Canfield*, 212 F.3d at 718.

"As both the Supreme Court and Second Circuit have held, a violation of the Fourth Amendment 'does not necessarily result in the application of the exclusionary rule.'"  *United States v. Kim*, No. 16-CR-191, 2017 WL 5256753, at *3 (E.D.N.Y. Nov. 10, 2017) (quoting *United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010)).  Accordingly, even if a court determines that a warrant was invalid, "[w]hen an officer genuinely believes that he has obtained a valid warrant from a magistrate and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, and thus [no future violation] to deter" by excluding the evidence. *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015) (cleaned up).  To deny a motion to suppress under the "good faith exception," the officer's reliance on the warrant must be objectively reasonable.  *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).  The premise behind the good faith exception is that the value of the exclusionary rule outweighs its cost when the police "exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights," *United States v. Stokes*, 733 F.3d 438, 443 (2d Cir. 2013), but it does not when the police, in good faith, rely on an invalid warrant.

The good faith exception is unavailable in at least four circumstances: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Raymonda*, 780 F.3d at 118 (internal quotation marks omitted) (quoting *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011)).

**B. There Was Probable Cause to Issue the CSLI Warrant**

"[A] magistrate's determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (cleaned up). Generally, then, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Id.* Here, however, the Court may not rely on the magistrate judge's finding of probable cause because the Government has — for purposes of this case only — disavowed reliance on certain critical information contained in the warrant application that undoubtedly was important to the magistrate judge's finding of probable cause. Indeed, the Government concedes that in the circumstances of this case, the Court must conduct a *de novo* review. Oral Arg. Tr. at 11. Accordingly, the Court's review is *de novo*, notwithstanding the magistrate's reasoned finding of probable cause. *Cf. Rajaratnam*, 719 F.3d at 146.

Having reviewed the CSLI Application anew, without considering the contents of the intercepted communications, the Court concludes that the Government established probable cause to believe that information derived from the CSLI would lead to evidence of a crime and to the identities of others involved in criminal conduct.[6] Without the content of the intercepted communications, it is admittedly a thin showing of probable cause, but, ultimately, the combination of contacts among Del Villar and several other phones identified in investigations of drug trafficking operations together with Del Villar's pattern of travel from Los Angeles to

---

[6]    Del Villar's argument that the CSLI affidavit relied on an outdated legal standard is not a serious argument: both the CSLI Affidavit and the CSLI Warrant invoke the requirement that probable cause must exist for the Government to obtain Del Villar's CSLI. *See, e.g.*, CSLI Affidavit ¶ 7 (stating that — in section titled "Facts Establishing Probable Cause" — "[a]lthough I understand that probable cause is not necessary to obtain all of the Requested Information, I respectfully submit that probable cause exists to believe that the Requested Information will lead to evidence of the crimes of narcotics conspiracy . . . and money laundering . . . as well as the identification and locations of the Target Subjects who are engaged in the Subject Offenses"); CSLI Warrant ¶ 2 ("[T]he Government's application sets forth probable cause to believe that the prospective and historical location information for the Target Cellphone will reveal evidence, fruits, or instrumentalities of suspected violations of [21 U.S.C. § 846 and 18 U.S.C. § 1956], as well as the identification and locations of the Target Subjects who are engaged in the Subject Offenses.").

New York City support a finding of probable cause.  Agent Malamis testified that he has been

investigating narcotics trafficking as a DEA agent for nearly 11 years and that he is intimately

familiar with the practices of Mexico-affiliated drug traffickers.  Suppression Hearing Tr. at 6.

The CSLI Affidavit states that Del Villar traveled between Los Angeles and New York City,

with each return trip occurring within two to five days of departure.  CSLI Affidavit ¶ 10(a).  As

Agent Malamis testified, this pattern of travel aroused the suspicions of law enforcement given

the frequency of the trips and the short duration of his stays in New York.  *See* Suppression

Hearing Tr. at 19.

The CSLI Affidavit also discussed a series of communications between Del Villar's

telephone and other telephones implicated in law enforcement investigations.  *See* CSLI

Affidavit ¶ 10(c)–(h).  As Agent Malamis testified at the evidentiary hearing, in his experience, a

critical step in analyzing toll records as part of a narcotics investigation is determining whether

the target phone is in contact with phone numbers targeted in other law enforcement

investigations.  If so, the information that other law enforcement agents are able to provide is

often helpful to determine whether a warrant on the target phone would be likely to yield

evidence of a crime.  Suppression Hearing Tr. at 10.  The frequency and duration of

communications is also an important consideration; for example, a flurry of calls in quick

succession followed by an absence of contact often reveals that a narcotics transaction is about to

transpire.  *Id.* at 10, 18.

As discussed above, the CSLI Affidavit described a constellation of contacts between Del

Villar's telephone and "dirty" phones (*i.e.*, telephones implicated in other criminal

investigations), as well as contacts among the other "dirty" phones with which Del Villar had

been in communication.  For instance, Del Villar's telephone had two contacts with the 0965

Cellphone, which itself had been subject to a CSLI warrant in this district.  CSLI Affidavit ¶¶

10(b), (e).  The 0965 Cellphone had (i) five contacts with the 4275 Cellphone, whose user had

been arrested with a significant quantity of fentanyl and methamphetamine; (ii) 13 contacts with

the 2668 Cellphone, for which a wiretap order had been issued in connection with a drug-

trafficking investigation; and (iii) 12 contacts with the Mexico Phone.  *Id.* ¶¶ 10(c), (d), (g).  The

CSLI Affidavit details several other overlapping contacts among Del Villar, the 0965 Cellphone,

the 8421 Cellphone,[7] the Mexico Phone, and the 8759 Cellphone.[8]  *See id.* ¶ 10.  Considered

collectively, the association with a cellphone linked to a substantial drug seizure, the regular

contact among the suspected cellphones, and their respective connections to drug trafficking, the

Court is drawn to the conclusion that the users of these phones are probably part of the same

network, or at least had overlapping involvement with one another, and the possibility that the

communications between Del Villar's cellphone and the other phones were merely innocent

happenstance is severely undercut.  *See id.*  The Court finds that the CSLI Affidavit demonstrates

that Del Villar was involved in an array of communications with a series of individuals known to

be or suspected of being involved in drug trafficking.

Considering Agent Malamis' wealth of experience in conducting this type of

investigation, the Court finds the pattern of travel and network of communications, evaluated in

the context of the DEA's ongoing investigation of Mexico-affiliated drug trafficking and other

ongoing DEA investigations into narcotics trafficking, support a finding of probable cause to

believe that Del Villar was involved in a drug trafficking organization and that information to be

---

[7]      The 8421 Cellphone: (i) had approximately 37 contacts with the 0965 Cellphone over a two-month period;
(ii) had 6 contacts with the Mexico Phone on one day; and (iii) was in contact with another telephone (the 8759
Cellphone) that was also subject to a wiretap order.  CLSI Affidavit ¶ 10(h).

[8]      The 8759 Cellphone, as indicated in note 7, *supra*, was subject to a wiretap order.  Although the CSLI
application is silent as to the predicate offense for the wiretap, according to Agent Malamis' testimony during the
Suppression Hearing, the wiretap order was obtained as part of a DEA investigation.  Suppression Hearing Tr. at
32–33.

gleaned from CSLI from his cellphone would provide evidence regarding that criminal conduct. *Id.* ¶ 10(i).

The Court reaches its decision in spite of Del Villar's showing at the suppression hearing that the number of communications between his cellphone and the other cellphones implicated in the investigation may have been overstated.  A review of Del Villar's phone records makes clear that some of the communications captured were almost certainly not, in fact, distinct communications; the likelihood that Del Villar engaged in multiple communications of the same exact duration at precisely the same date and time is not only extremely unlikely, it is also mathematically impossible in some instances (such as when two calls are documented as having lasted 25 seconds and 23 seconds each beginning one second apart).  *See* Suppression Hearing Tr. at 49.  A more intensive review of the phone records by DEA agents likely would have yielded a different number of distinct communications between Del Villar's cellphone and the various other phones swept up in the investigation (and perhaps among those phones as well). But even if the Court were to reduce the number of communications as stated in the CSLI Affidavit by half, the constellation of communications between Del Villar's cellphone and various other phones either known to be engaged in drug trafficking or suspected of engagement in drug trafficking still exists.[9]  Accordingly, even if Del Villar's cellphone only communicated with the Mexico Phone 125 times (instead of 250) and the 0965 Cellphone communicated with the 4275 Cellphone only three times (instead of five), etc., there is still a meaningful number of communications among the phones; the network of contacts in which Del Villar's cellphone was

---

[9]     Moreover, in some instances, fewer communications between Del Villar and another phone or between two other suspected phones may provide stronger support for Agent Malamis' theory of common drug trafficking patterns, considering the notion that a brief "flurry" of calls is, at times, more indicative of trafficking than a sustained pattern of communications.  *Id.* at 10, 18.

involved remains intact.  Put differently, the distinction between 57 communications and 25 is not a material difference for purposes of the Court's probable cause determination.

Del Villar's demonstration that the number of communications stated in the CSLI Affidavit may have been higher than the true numbers does not yield a finding that Agent Malamis deliberately or recklessly included false or misleading information in the application for the warrant.[10]  First, as the Court just explained, the absolute frequency of communications among and between the relevant phones discussed in the CSLI Affidavit is not material to the Court's probable cause determination.  *Rajaratnam*, 719 F.3d at 146.  Supplementing the affidavit with evidence introduced during the suppression hearing — *i.e.*, the "true" number of communications between the targeted phones — and reviewing this corrected affidavit *de novo*, the Court still finds that the corrected affidavit supports a finding of probable cause.  *Canfield*, 212 F.3d at 718.  Because the inflated number of communications stated in the affidavit was not necessary to the Court's finding of probable cause, suppression is not warranted.  *Id.*

Further, and critical to the Court's subsequent analysis of the good faith exception, the alleged inaccuracies concerning the number of communications are not the result of a deliberate falsehood or reckless disregard for the truth.  *Salameh*, 152 F.3d at 113.  As an initial matter, the information in the CLSI Affidavit is, on its face, arguably factually accurate.  As was made clear at the suppression hearing, the number of communications stated in the CSLI Affidavit reflected a count of the "number of rows" of contacts between two phones in the toll records produced by the cellular provider.  *See, e.g.*, Suppression Hearing Tr. at 47–48.  Agent Malamis testified that

---

[10]     The Court notes that the May 12, 2021 evidentiary hearing was *not* a *Franks* hearing, and the scope of the hearing did not extend to the issue of whether the CSLI Affidavit contained false and misleading statements. Instead, the issue was whether law enforcement could rely on the good faith exception if the Court were to find that the warrant was not supported by probable cause absent the content of the intercepts.  Similarly, Del Villar at no point raised a *Franks* issue in his motion papers.  Instead, the first time the issue was raised was during cross-examination of Agent Malamis at the May 12, 2021 hearing.  *Id.* at 114.  Nevertheless, the Court has opted to address the alleged *Franks* issue for the sake of completeness.

providers produce information in different formats and that law enforcement is often unable to discern whether a contact listed in toll records reflects a phone call or a text message; accordingly, a zero-duration contact may in fact be a text message. *See id.* at 44–46.  Instead, the toll records reveal only that the phone number at issue was "dialed." *Id.* at 47.  Accordingly, it is at least possible, even if not probable, that Agent Malamis' representation in the CSLI Affidavit that two numbers engaged in a certain number of communications, reflective of a count of the number of "rows" in the toll records, is not at all a misstatement, let alone a deliberately or recklessly false one.

Even accepting that the number of communications listed in the CSLI Affidavit was inflated as a result of counting certain duplicates that appeared in the toll records, the Court finds that this constitutes, at worst, negligence, not a deliberate and knowing falsehood or recklessly false or misleading information.  Counting the number of rows in the toll records as opposed to attempting to ascertain whether each row pertained to a call or a text message or was simply a duplicate is, perhaps, an unacceptable shortcut,[11] but it in no way evinces the requisite *mens rea* of deliberate or recklessly misleading statements.  Agent Malamis' negligence or lack of diligence in ascertaining the optimal method for determining the absolute number of communications among Del Villar's cellphone and the other phones based on the specific toll records at issue in this case does not, as a matter of law, merit invalidation of the CSLI Warrant. *See Franks*, 438 U.S. at 171.

---

[11]     If the shortcut is to be taken, a better practice would be to describe it in the warrant application so that the reviewing magistrate judge will be aware that the absolute number of contacts may be inflated due to duplicates or missed calls.

### C.  Even if There Were Not Probable Cause for the Issuance of the Warrant, the Good Faith Exception Would Apply

Although the Court has concluded that the CSLI Warrant was supported by probable cause even in the absence of the content of the intercepted communications, even if it had not, Del Villar's motion to suppress would be denied because the Court finds that the agents executing the CSLI Warrant acted in good faith.  Suppression Hearing Tr. at 126.  The only two bases for finding that the good faith exception should not apply in this case are the potentially overstated number of contacts set forth in the CSLI Affidavit and the fact that the Government has abandoned reliance on the content of the intercepted communications to support the CSLI Warrant.  Neither implicates any of the circumstances in which the good faith exception is unavailable, nor do they lead to the conclusion that law enforcement agents knew the search to be illegal.

First, there is no evidence that the magistrate judge was knowingly misled.  With respect to the contents of the intercepted communications, there is no claim that the information asserted in the CSLI Affidavit was false; Del Villar has neither argued nor put forth any evidence from which it could be inferred that the information concerning contents of the intercepts was inaccurate.  Instead, the Government has continued to stand by the accuracy of the information, noting that its decision not to rely on the information, made after the warrant was obtained, is purely strategic.  Oral Arg. Tr. at 10, 13–14.  Agent Malamis testified that he learned of the intercepted communications by speaking with the law enforcement agents involved in other investigations, who told Agent Malamis that the conversations were intercepted as part of investigations of narcotics trafficking.  *See* Suppression Hearing Tr. at 33.  Agent Malamis received oral approval from those other agents to use the intercepted communications in support of the CSLI Warrant.  Neither at the time he drafted the warrant application nor at the time of the

17

suppression hearing did he have any reason to doubt the accuracy of his statements regarding the intercepted conversations. *Id.* at 33–34. The Court credits Agent Malamis' testimony and finds no basis to conclude that the magistrate judge was knowingly misled by the inclusion of the intercepted communications in the CSLI Affidavit.

Nor do the potentially inflated number of communications between the various cellphones in the CSLI Affidavit support a finding that the magistrate judge was intentionally misled. Whether a magistrate judge has been knowingly misled is considered pursuant to the same *Franks* standard discussed above. *See Leon*, 468 U.S. at 923 ("Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." (citing *Franks*, 438 U.S. at 155–56)); *see also United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (applying the *Franks* standard to the knowingly misled exception). Accordingly, because the Court has already concluded that Agent Malamis did not inflate the number of communications between and among the relevant phones in the CSLI Affidavit knowingly, intentionally or recklessly, the Court also concludes that the magistrate judge was not knowingly misled.

Del Villar's argument that the CSLI application was so lacking in indicia of probable cause as to render reliance upon it unreasonable also fails. Finding that an affidavit is so lacking in indicia of probable cause that reliance on it is not reasonable is a "very difficult threshold to meet." *Falso*, 544 F.3d at 128 n.24. Where reasonable minds can differ as to the existence of probable cause, the underlying document is not so lacking in indicia of probable cause as to make reliance on it unreasonable. *Id.* at 128–29. Here, the Court has already concluded that, even after excluding the content of the intercepted calls, the CSLI Affidavit made out probable cause. With the content of those calls, there is no question that the warrant was supported by

probable cause.  But even if the Court had tilted the other way and concluded that the warrant was defective for want of probable cause, the CSLI Affidavit itself is not so lacking in indicia of probable cause to render reliance on it unreasonable.  Instead, the CSLI Affidavit contains particularized facts derived from an inquiry into Del Villar's cellphone, including travel and communication patterns, and law enforcement used those particularized facts to draw logical inferences about Del Villar's conduct.

Lastly, the CSLI Warrant was not facially deficient.  "[A] warrant is facially defective when it omits or misstates information specifically required to be contained therein, *i.e.*, the place to be searched, and the persons or things to be seized."  *United States v. Clark*, 638 F.3d 89, 102 (2d Cir. 2011) (citing *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984); *Groh v. Ramirez*, 540 U.S. 551, 564 (2004)).  Here, the CSLI Warrant plainly met that minimal showing.

Having found that none of the four circumstances that can render the good-faith exception unavailable is present, the Court must consider "whether a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances."  *Herring v. United States*, 555 U.S. 135, 145 (2009) (cleaned up).  "[W]hen assessing the officer's good faith reliance on a search warrant under the *Leon* good faith exception, we can look outside of the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit."  *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014) (citation omitted); *see also United States v. Williams*, No. 17-CR-78, 2019 WL 4454250, at *10 (W.D.N.Y. Apr. 25, 2019), *report and recommendation adopted*, No. 17-CR-78, 2019 WL 3074058 (W.D.N.Y. July 15, 2019) (collecting cases with similar holdings).  The totality of the circumstances here, considering collectively the information set forth in the CSLI Affidavit and as testified to at the suppression hearing, give the Court no reason to question whether agents investigating Del Villar would have had reason to

believe that the warrant to obtain Del Villar's CSLI was illegal.  Instead, the agents' reliance on the CSLI Warrant was objectively reasonable.

Accordingly, Del Villar has failed to demonstrate that the good-faith exception does not apply under these circumstances.  Accordingly, even if the Court had determined that the CSLI Warrant was not supported by a showing of probable cause, the Court would deny Del Villar's motion to suppress based on good faith exception to the exclusionary rule.

### V.    Del Villar's Motion To Suppress Evidence Seized Incident to His Arrest and Pursuant to the Premises Search Warrant Is Denied

#### A.  Legal Standard

Probable cause exists to arrest an individual when an officer has "knowledge or reasonably trustworthy information" such that "a person of reasonable caution" would believe that the individual has committed or is committing a crime. *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  A court must consider the facts known by the officer at the time of the arrest and whether those facts objectively supplied probable cause. *Id.* at 153 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).  Having made a lawful arrest, law enforcement may conduct a warrantless search incident to an arrest. *United States v. Diaz*, 854 F.3d 197, 205 (2d Cir. 2017) (citing *Riley v. California*, 134 S. Ct. 2473, 2482 (2014)).

#### B.  Del Villar's Arrest Was Supported by Probable Cause

Having found that the CSLI Warrant was valid, Del Villar's argument that the Government lacked probable cause to arrest him is significantly weakened.  As reflected in the information in the application for the CSLI Warrant, prior to the day of the arrest, law enforcement had reason to suspect that Del Villar was involved in narcotics trafficking.  Agents' observations on March 9, 2020 — including that Del Villar exited an apartment building

carrying a squared-off, weighted backpack, promptly entered Rosado's car for only a few minutes, exited the car with a lighter backpack, and immediately walked back to the apartment building — provided them circumstantial evidence that Del Villar had delivered something to Rosado.  The agents then stopped Rosado, who falsely denied that he had just met someone, and the agents recovered six bricks of suspected narcotics from a trap in his car.  At that point, the agents clearly had probable cause to arrest Del Villar.

Del Villar argues that there was not probable cause to arrest him because: (1) there is a question of fact whether law enforcement knew that drugs had been seized from Rosado's car at the time that they arrested Del Villar; and (2) law enforcement did not see what transpired when Del Villar got into Rosado's car.[12]

Even if the basic premise of Del Villar's first argument were correct — that is, there could not have been probable cause absent law enforcement's clear knowledge of the seizure of drugs from Rosado's car at the time of Del Villar's arrest — testimony at the suppression hearing demonstrated that Del Villar's arrest occurred after the seizure of drugs from Rosado's car.[13] Agent Malamis testified that he personally participated in Del Villar's arrest on the night of March 9, 2020, and that, at the time of Del Villar's arrest, he was aware that narcotics had just been seized from Rosado's vehicle.  Suppression Hearing Tr. at 38.  Agent Malamis further

---

[12]      Del Villar's argument that mere presence in a car from which drugs are later seized does not establish probable cause is misplaced.  The cases to which Defendant cites for this proposition are not analogous.  *See* Def. Mem. at 10 (citing, *inter alia*, *United States v. Everroad*, 704 F.2d 403, 406–07 (8th Cir. 1993)).  Here, Del Villar was more than a random bystander who happened to get caught up in law enforcement's investigation as a purely coincidental matter.  Del Villar was himself the target of the investigation, and, combined with the other circumstances observed on the night of his arrest, the Government relies on far more than the happenstance of Del Villar's presence in a car from which the DEA seized six bricks of heroin.

[13]      Whether Del Villar was even entitled to an evidentiary hearing on the timing of his arrest is far from clear.  Although the Government's reports contained a factual discrepancy, Del Villar himself failed to submit an affidavit to create a question of fact.  *See, e.g.*, *United States v. Martinez*, 992 F. Supp. 2d 322, 326 (S.D.N.Y. 2014) (collecting cases holding that sworn affidavit is necessary to create a factual dispute warranting an evidentiary hearing).

testified that the information concerning the seizure of drugs from Rosado's car played "[t]he main role" in law enforcement's decision to arrest Del Villar.  *Id.*  Agent Malamis also testified that, very shortly after placing Del Villar under arrest, he confirmed that one of the two phones seized from Del Villar was the cellphone that had been subject to the CSLI Warrant by calling that cellphone.  One of Del Villar's phones rang and a call from Agent Malamis's cellphone was recorded on the pen register that was on Del Villar's cellphone as having occurred at 8:39 p.m. *See id.* at 39–40.  Additionally, DEA Special Agent Anthony Ferentini testified, among other things, that he personally participated in Rosado's arrest and then proceeded to Del Villar's location where he participated in Del Villar's arrest.  *Id.* at 88–89, 94.  In short, the uncontroverted testimony demonstrated that the seizure of drugs from Rosado's car occurred prior to Del Villar's arrest.[14]

Del Villar's second argument is also unavailing.  That law enforcement did not witness what transpired in the car between Del Villar and Rosado is not fatal to a finding of probable cause; in fact, it is entirely unsurprising.  Most crimes are not committed in plain sight, and law enforcement is not required personally to witness a drug transaction in order to establish probable cause for an arrest.  In this case, the circumstantial evidence is sufficient to establish probable cause.  Del Villar exited an apartment building carrying a weighted backpack; he had a brief meeting in a parked car that lasted less than five minutes; Del Villar exited the car with the backpack that appeared to be meaningfully lighter than when he got into the car; and a search of the car revealed six bricks of heroin.  Considered collectively with the information that formed the basis for the CSLI Warrant and that was gleaned from the CLSI Warrant, there was more

---

[14]     In fact, at the hearing, Del Villar's then-counsel all but conceded that law enforcement had seized drugs from Rosado's car at the time of Del Villar's arrest.  *See* Suppression Hearing Tr. at 117–18.

than sufficient evidence to establish probable cause for Del Villar's arrest without the agents

seeing exactly what transpired when Del Villar was in Rosado's car.

In short, there is no question that law enforcement had probable cause to arrest Del Villar

on the night of March 9, 2020.[15]

### CONCLUSION

For the reasons discussed above, and at the May 12, 2021 suppression hearing, Del

Villar's motion to suppress is DENIED.

**SO ORDERED.**

Date:  **September 22, 2021**
         **New York, NY**

                      **VALERIE CAPRONI**
                  **United States District Judge**

---

[15]     The Court also denies Del Villar's motion to suppress evidence seized pursuant to a search warrant for the apartment in which he was staying.  Because the Court has upheld Del Villar's arrest, and because his only argument for suppression of evidence seized pursuant to the premises warrant was that (i) the key bearing the number "2" was seized pursuant to his allegedly unlawful arrest and (ii) the key is the only link between Del Villar and the apartment, the premise for Del Villar's challenge to the premises warrant failed.  *See* Def. Mem. at 11–12.